UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEIBYS MERCEDES,

       Plaintiff,

 v.

WESTCHESTER COUNTY; GLOBAL
TEL-LINK d/b/a ADVANCEPAY
SERVICES; ARAMARK
CORRECTIONAL SERVICES, LLC;
CORRECT CARE SOLUTIONS d/b/a
C.C.S; JOHN AND JANE DOE(S) 1–100,
*and* ALL UNKNOWN ENTITIES AND
INSURERS, *all jointly and severally, in their
individual and official capacities*,

       Defendants.

No. 18-CV-4087 (KMK)

OPINION & ORDER

---

Appearances:

Leibys Mercedes
Valhalla, NY
*Pro Se Plaintiff*

Mony B.P. Yin, Esq.
Bennett, Bricklin & Saltzburg, LLC
New York, NY
*Counsel for Defendants Westchester County and Aramark*

Fay A. Jones, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendant Westchester County*

Sanjeev Devabhakthuni, Esq.
Paul A. Sanders, Esq.
Barclay Damon LLP
Rochester, NY
*Counsel for Defendants Westchester County and Correct Care Solutions*

KENNETH M. KARAS, District Judge:

Leibys Mercedes ("Plaintiff"), a pretrial detainee at Westchester County Jail at the time of the allegations, brings this pro se Action, pursuant to 42 U.S.C. § 1983, against Defendants Westchester County, Aramark Correctional Services, LLC ("Aramark"), Correct Care Solutions, d/b/a C.C.S. ("Correct Care"), Global Tel-Link, d/b/a AdvancePay Services, John and Jane Doe(s) 1–100, and all unknown entities and all insurers. Read liberally, Plaintiff's Complaint alleges violations of his First, Sixth, and Fourteenth Amendment rights related to his access to the courts, his right to a fair trial, and his conditions of confinement, as well as state law tort claims.[1,2] (*See* Compl. (Dkt. No. 2).) Before the Court are Defendants' Motions To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Correct Care Defs.' Not. of Mot. (Dkt. No. 19); Aramark Defs.' Not. of Mot. (Dkt. No. 33).) For the reasons stated herein, the Motions are granted.

## I. Background

### A. Factual Background

The facts recounted below are drawn from the Complaint, and a letter Plaintiff submitted in opposition to Correct Care Defendants' Motion, (*see* Pl.'s Letter in Opp'n to Correct Care Defs.' Mot. To Dismiss ("Pl.'s Letter") (July 23, 2018) (Dkt. No. 17)), and are assumed to be

---

[1] Aramark Defendants state that Plaintiff incorrectly names Aramark as only "Aramark," and that the correct full entity name is Aramark Correctional Services, LLC. (*See* Aramark Defs.' Mem. Law. in Supp. of Mot. To Dismiss ("Aramark Defs.' Mem.") 5 (Dkt. No. 34); *see generally* Compl.) The Court lists Aramark based on the full title provided by Aramark Defendants and refers to the entity as Aramark for short only.

[2] Westchester County appears in this Action jointly with Correct Care, to the extent allegations of medical care or treatment are asserted (collectively, "Correct Care Defendants"), (Decl. of Jonathan H. Bard, Esq. ("Bard Decl.") ¶ 1 (Dkt. No. 20)), and jointly with Aramark regarding the remaining allegations (collectively, "Aramark Defendants"), (Aramark Defs.' Mem. 6).

2

true for purposes of resolving the Motions.

Plaintiff alleges that he was arrested on July 7, 2017 for reasons that remain unknown to him.[3] He alleges that he was not "doing what [he] was charged with," but that he was nonetheless brought to Westchester County Jail ("the Jail") and denied constitutional bail.[4] (Compl. 5.)

Plaintiff alleges there were no attorney-client privilege calls and no "attorney-client phones" at the Jail. (*Id*.) Plaintiff alleges that the phones provided no privacy to allow him to contact or interview any expert witnesses or character witnesses. (*Id*.) This lack of privacy in interviewing and hiring witnesses was "extremely shocking" to Plaintiff, demonstrated to him "the impossibility of a fair trial," and served as a "stressful beginning to what soon became a denial of [his] constitutional right to a fair trial." (*Id*.)

Plaintiff further alleges that there is a "total lack of law books" in the Jail law library. There are allegedly no legal dictionaries, and no New York "annotated code or statute law books." (*Id*.) Copy paper is also allegedly "virtually non-existent and inmates are charged 10 cents per sheet, when there is any." (*Id*.) Plaintiff alleges that numerous books "required by [N]ew York [S]tate do not exist," and that therefore he was denied access to the courts, attorney-client privilege, the right to a fair trial, the right to confront, and due process. (*Id*. at 5–6.) Plaintiff alleges that he was forced to take a plea deal despite the absence of probable cause to charge him, and that he was coerced to do prison time due to these violations. (*Id*. at 6.)

---

[3] The Court notes that Plaintiff was convicted of federal narcotics charges on November 7, 2011. (*See* Case No. 17-CR-419, Dkt. (minute entry for Nov. 7, 2011).) Plaintiff was represented by counsel throughout his criminal case.

[4] Plaintiff's filings do not have consistent pagination. To avoid confusion, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

3

Plaintiff was "extremely tired from the poor food, which Aramark Corporation puts on the food trays." (*Id*.) The food Aramark served is allegedly mostly "soy, cheap carbs, sugar and starch . . . [and] lacks in nutrition." (*Id*.) Plaintiff alleges that this "bogus diet" is not sufficient to sustain him through the stress of a trial, and that he is being physically and mentally manipulated "from any chances of a fair trial." (*Id*.)

The medical care at the Westchester County Jail is allegedly "so bad" that Plaintiff is in fear for his life, and that instead of risking the "chance of such quackery," he goes without medical care. (*Id*.) Plaintiff alleges that the "[J]ail inmates have numerous cases for cancer, MERSA, diabetes, et al, painful both mentally and physically to where mental anguish and horror cause me a total fear for my life." (Pl.'s Letter 3–4.)

Plaintiff alleges that he was forced to serve prison time in an unsafe environment that caused him sleeplessness, mental anguish, emotional distress, loss of enjoyment of life, and alienation of affection. (Compl. 6.) Plaintiff alleges that he was subjected to physical and mental pain and suffering, made to fear for his life, safety, and health, denied access to the courts, and denied his right to a fair trial and confrontation. (*Id*. at 7.)

B.  Procedural History

Plaintiff filed his Complaint on May 5, 2018. (Compl.) On May 23, 2013, the Court granted Plaintiff's request to proceed in forma pauperis. (Dkt. No. 5.) On June 4, 2018, the Court issued Orders directing service on Defendants. (Dkt. No. 7.)

On July 6, 2018, counsel for Correct Care Defendants submitted a pre-motion letter to the Court requesting permission to file a Motion to Dismiss. (*See* Letter from Jonathan Bard, Esq., to Court (Dkt. No. 11).) On July 16, 2018, the Court granted Correct Care Defendants' request and set a briefing schedule. (Dkt. No. 14.) On July 23, 2018, Plaintiff filed a letter opposing

Correct Care Defendants' proposed Motion. (Pl.'s Letter.)

On August 15, 2018, Correct Care Defendants filed their Motion To Dismiss and accompanying papers. (Correct Care Defs.' Not. of Mot.; Decl. of Jonathan Bard, Esq. ("Bard Decl.") (Dkt. No. 20); Correct Care Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Correct Care Defs.' Mem.") (Dkt. No. 21)).

On September 10, 2018, counsel for Aramark Defendants submitted a pre-motion letter to the Court requesting permission to file a Motion to Dismiss. (Letter from Mony Yin, Esq., to Court (Dkt. No. 25).) On September 18, 2018, the Court granted Aramark Defendants' request and set a briefing schedule. (Dkt. No. 27.)

On September 27, 2017, counsel for Correct Care Defendants filed a reply. (Reply Decl. of Sanjeev Devabhakthuni, Esq. ("Devabhakthuni Reply Decl.") (Dkt. No. 30).)

On October 18, 2018, Aramark Defendants filed their Motion To Dismiss and accompanying papers. (Aramark Defs.' Not. of Mot.; Aramark Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Aramark Defs.' Mem.") (Dkt. No. 34).) Plaintiff did not file any further responses. On December 4, 2018 the Court deemed the Motions fully briefed. (Dkt. No. 36.)

## II. Discussion

Correct Care Defendants argue that Plaintiff fails to state a claim because (1) he does not allege any individual's personal involvement in the events described, (2) fails to allege municipal liability, (3) fails to allege deliberate medical indifference to any medical need, and (4) fails to allege any facts from which a state law claim may be derived. (Correct Care Defs.' Mem. 4–18.)

Aramark Defendants argue that Plaintiff fails to state a claim because (1) he fails to plead municipal liability, (2) fails to plead personal involvement of any individual, and (3) fails to plead any of his other claims including, conspiracy, denial of access to the courts, denial of a fair

trial, and common law tort. (Aramark Defs.' Mem. 9–20.) Aramark Defendants also argue that the denial of bail is constitutional. (*Id.* at 15.)

    A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted);

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the Plaintiff is pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for

a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

B.  Personal Involvement

Correct Care and Aramark Defendants correctly argue that the Complaint must be dismissed because Plaintiff fails to identify or mention any individuals who engaged in any actions or omissions in connection with the violation of any of Plaintiff's constitutional rights. (Correct Care Defs.' Mem. 4–7; Aramark Defs.' Mem. 11–13.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133,138 (2d Cir. 2013) (citation omitted).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with

8

respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff does not name or mention any individual, not even in conclusory terms, as having been present or involved in his attempt at making privileged telephone calls, locating books in the law library, procuring a nutritious meal, or seeking medical care. Plaintiff names as Defendants "Jane and John Does 1–100," (Compl. 3), but offers no further description of any of these individuals, or of their alleged involvement in any violation of his constitutional rights. Plaintiff lists Global Tel-Link, d/b/a AdvancePay Services, as a Defendant, (*id*.), but provides no further information about what this entity is and how it was allegedly involved in any violations of Plaintiff's constitutional rights. Indeed, there is no description of any observable action or omission or any conduct whatsoever by any person. Plaintiff thus fails to allege the personal involvement of any Defendant. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation (citing *Grullon*, 720 F.3d at 139); *Lara-Grimaldi v. County of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *11 (S.D.N.Y. Mar. 29, 2018) (holding personal involvement not established where the "[c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in, aware of, or somehow permitted" the violation); *McClenic v. Shmettan*, No. 15-CV-705, 2015 WL 1930088, at *2–5 (E.D.N.Y. Apr. 28, 2015) (dismissing § 1983 claim where Plaintiff failed to allege the personal involvement of any individual defendant); *George v. City of N.Y.*, No. 12-CV-6365, 2013 WL 5943206, at *6 (S.D.N.Y. Nov. 6, 2013) (holding that "the failure to allege that an individual was personally and directly involved is a fatal defect on the face of the complaint" (citing *Iqbal*, 556 U.S. at 670)).

The deficiency in this Complaint is not merely that Plaintiff names an entity or a

9

supervisor and fails to allege personal involvement—Plaintiff simply does not make any allegations regarding any individual whatsoever. Accordingly, Plaintiff's constitutional claims must be dismissed in their entirety. *See Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *4 (S.D.N.Y. Mar. 7, 2019) (holding personal involvement not established where, "although [the defendant's] name and title . . . appear in the caption of the Amended Complaint, [the] [p]laintiff fails to name or identify [the defendant] anywhere in the body of the Amended Complaint or otherwise connect him to the allegations raised therein" (citation omitted)); *King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (holding personal involvement not established where the "plaintiff includes [the defendant's] name in the case caption but fails to make any substantive allegations against her in the body of the complaint"); *Tracey v. City of Geneva*, No. 17-CV-6567, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018) ("A complaint that lumps all the defendants together . . . and provides no factual basis to distinguish their conduct fails to satisfy [Rule 8]." (citations, alterations, and quotation marks omitted)); *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("[C]omplaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." (citations and quotation marks omitted)).

    C.  Municipal Liability

Correct Care and Aramark Defendants also correctly argue that Plaintiff has failed to state a *Monell* claim against any Defendant. (Correct Care Defs.' Mem. 7–10; Aramark Defs.' Mem. 9–11.)

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v.*

10

*Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–691). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citation omitted). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, Plaintiff makes entirely conclusory allegations about the lack of attorney-client privileged calls, the lack of books and resources in the legal library, and the low quality of the food and medical care at the Westchester County Jail. (Compl. 5–6.) Plaintiff does not allege the existence of any policy, any actions taken or decisions made by any County, Aramark, or Correct Care policymaking officials, any systemic failures to train or supervise, or any practices

11

so widespread that they practically have the force of law. Plaintiff simply does not allege any factual indicia from which this Court could infer the existence of a policy or custom. Accordingly, because Plaintiff does not allege the fifth element required to state a *Monell* claim against any Defendant, Plaintiff's Complaint must be dismissed. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *cf. Bryan Cty.*, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality."); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (citation, alteration, and quotation marks omitted)); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citing *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991))); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation." (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985)))).[5]

---

[5] Because dismissal is required on the grounds of Plaintiff's failure to show the personal involvement of any individual Defendant in the alleged constitutional deprivation and failure to state a *Monell* claim, the Court need not resolve at this time Defendants' arguments that Plaintiff fails to allege sufficient facts to state claims under the First, Sixth, and Fourteenth Amendments. (*See* Correct Care Defs.' Mem. 10–15; Aramark Defs.' Mem. 13–20.) In correcting the deficiencies identified in this Opinion, Plaintiff will have the opportunity to further develop his claims.

12

D.  State Law Claims

Plaintiff alleges that he suffered sleeplessness, mental anguish, emotional distress, loss of enjoyment of life, alienation of affection, and physical and emotional pain.  (Compl. 6–7.)  To the extent these allegations can be liberally construed as alleging state law claims, the Court now declines to exercise pendent jurisdiction over them.  The Court has dismissed all federal claims asserted by Plaintiff.  Pursuant to 28 U.S.C. § 1367(c), the Court may therefore decline to exercise pendent jurisdiction over any state law claims.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." (citation omitted)); *Sadallah v. City of Utica*, 383 F.3d 34, 39–40 (2d Cir. 2004) (directing district court to enter judgment for defendants on federal law claims and to "dismiss any state law claims without prejudice" (citing *Gibbs*, 383 U.S. at 726)).  Accordingly, Plaintiff's state law claims are hereby dismissed.

III.  Conclusion

For the reasons stated above, Defendants' Motions To Dismiss are granted.  Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice.  If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion.  Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider.  Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint.  The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.[6]

---

[6] Plaintiff should understand that to the extent he wishes to sue individuals for any

13

The Clerk is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 19, 33), and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: March 29, 2019
       White Plains, New York

                                          KENNETH M. KARAS
                                          UNITED STATES DISTRICT JUDGE

---

misconduct, but does not know their names, he should provide as much identifying information about the individuals as possible (name, gender, height, race, age, shift responsibilities, etc.).